**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**DAVID McGRIFF,**

    **Petitioner,**

**vs.**

                          **CASE NO. 4:08cv402-SPM/WCS**

**WALTER McNEIL,**

    **Respondent.**

                             /

## REPORT AND RECOMMENDATION

This is a petition for writ of habeas corpus filed by David McGriff pursuant to 28 U.S.C. § 2254. Doc. 6 (second amended petition). Petitioner challenges his convictions for battery on a law enforcement officer, resisting a law enforcement officer with violence, criminal mischief,[1] and burglary of a dwelling, in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number 05CF01897. *Id.* Respondent filed an answer and the record in paper form. Doc. 14. Respondent also

---

[1] Respondent correctly notes that this petition was filed after the conviction for criminal mischief, and the 60 day sentence for that conviction, had expired. Doc. 14, p. 3, n. 2. Thus, Petitioner was not "in custody" on that conviction when he filed this petition and the validity of that conviction is not at issue.

filed supplemental authority. Doc. 16. References herein to exhibits are to the record in paper form. Petitioner filed a traverse. Doc. 15. Respondent's calculation of the period tolled while Petitioner was actively pursuing state remedies shows that the petition was timely filed. Doc. 14, pp. 3-4. Respondent addresses the merits of the three claims presented.

**Summary of the trial evidence**[2]

On May 27, 2005, Tallahassee Police Officer Melissa Yown went to 4173 Jackson Bluff Road in Tallahassee to arrest Petitioner. Ex. E, p. 1. She was accompanied by five or six officers and United States Marshals. *Id.* She was met at the door by a young black male, who said no one was home, but the officer could hear noises in the back of the apartment. *Id.*, p. 2. Officers entered the apartment, located the attic access, and two officers entered the attic. *Id.* Petitioner was in the attic. *Id.* They ordered him to come down, and he yelled obscenities and refused. *Id.* Yown had the adjacent duplex vacated, ran back, saw Petitioner being shot with a Taser, saw him kick the attic firewall into the other half of the duplex, and saw him fall through the ceiling of the other half of the duplex. *Id.* She ran to the other apartment, ordered Petitioner to freeze, Petitioner tried to open a window, and he was "tased" again. *Id.* United States Marshals Frank Chiumento and Sixto Boyer entered and wrapped Petitioner up, but Petitioner continued to fight. *Id.* Investigator Perry entered, and Petitioner continued to fight. *Id.* Petitioner was carried shackled and kicking to the patrol car. *Id.* Yown states that at the car, Petitioner kicked Marshal Marty West. *Id.*

---

[2] This summary is a condensed version of Petitioner's *Anders* brief on direct appeal. Ex. E, brief, pp. 1-4.

Inside the patrol car, Petitioner kicked and broke the plastic separating the back seat from the front. Id. Testimony from Officer Perry, Marshal Sixto Boyer, and Marshal Marty West, was exactly the same as that of Officer Yown. Id., p. 3. West testified that Petitioner kicked him in the stomach. Id.

**Section 2254 Standard of Review**

For a claim which was fairly presented and adjudicated on the merits by the state court, the state court's factual determinations are presumed correct unless the Petitioner rebuts the presumption by clear and convincing evidence. § 2254(e)(1); Fugate v. Head, 261 F.3d 1206, 1215 and n. 11 (11th Cir. 2001) (citation omitted). Section 2254(e)(2) provides that:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>
>   (A) the claim relies on –
>
>     (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
>     (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
>   (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

As explained by the Supreme Court, "[i]f there has been no lack of diligence at the relevant stages in the state proceedings, the prisoner has not 'failed to develop' the facts under § 2254(e)(2)'s opening clause, and he will be excused from showing

compliance with the balance of the subsection's requirements."  (Michael) Williams v. Taylor, 529 U.S. 420, 437, 120 S.Ct. 1479, 1491, 146 L.Ed.2d 435 (2000).

> For state courts to have their rightful opportunity to adjudicate federal rights, the prisoner must be diligent in developing the record and presenting, if possible, all claims of constitutional error.  If the prisoner fails to do so, *himself or herself contributing to the absence of a full and fair adjudication in state court*, § 2254(e)(2) prohibits an evidentiary hearing to develop the relevant claims in federal court, unless the statute's other stringent requirements are met.  *Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings.*  Yet comity is not served by saying a prisoner "has failed to develop the factual basis of a claim" where he was unable to develop his claim in state court despite diligent effort.

529 U.S. at 437, 120 S.Ct. at 1491 (emphasis added).

Further, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d); Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); Ramdass v. Angelone, 530 U.S. 156, 120 S.Ct. 2113, 2119-20, 147 L.Ed.2d 125 (2000).

> The "contrary to" clause in § 2254(d)(1) "suggests that the state court's decision must be substantially different" from the relevant Supreme Court precedent.  Although a state court's decision that "applies a rule that contradicts the governing Supreme Court law is "contrary," a state court decision that applied "the correct legal rule" based on Supreme Court law to the facts of the petitioner's case would not fit within the "contrary to" clause even if the federal court might have reached a different result relying on the same law.  In evaluating the "'unreasonable application'

inquiry," the federal court should consider whether the state court's application of the law was "objectively unreasonable" and should not apply the subjective "'all reasonable jurists'" standard. The Supreme Court clarified that, under 28 U.S.C. § 2254(d)(1), the federal court may not issue the writ unless it finds that the state court applied Supreme Court law unreasonably.

Fugate, 261 F.3d at 1216 (summarizing the conclusions in Williams, citations omitted).

For an ineffectiveness of counsel claim, the "clearly established" standard is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under Strickland, "[a] convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. In determining whether counsel gave adequate assistance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066. Petitioner has a heavy burden, as he must show that "no competent counsel would have taken the action that his counsel did take." Fugate, 261 F.3d at 1217 (citation omitted). There are no rigid requirements or absolute duty to investigate a particular line of defense, and "more is not always better." *Id.* (citations omitted).

Even if Petitioner can show deficient performance, he must also show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S.Ct. at 2068.

While Strickland explained the performance and prejudice prongs of analysis, the court need not address them in that order or even address both, as failure to demonstrate either step of Strickland is dispositive of the claim against the petitioner. 466 U.S. at 697, 104 S.Ct. at 2069.

**Ground one**

Petitioner asserts that his trial counsel was ineffective for failing to call Roberta Jones and Armand Dickey as witnesses. Doc. 6, p. 4. Petitioner asserts that Jones would have testified that he had her permission to be in her half of the duplex "any time he pleased." *Id.*, p. 5-A (p. 6 on the electronic case filing docket, ECF). This, he asserts, would have been a defense to the most serious charge, burglary of that residence. *Id.* He also states that Jones would have testified that Petitioner did not kick or resist the officers in any manner. *Id.*, p. 5-B (p. 7 on ECF). Petitioner alleges that Dickey would have testified that during the arrest, Petitioner yelled "they're trying to kill me." *Id.* Respondent states that Petitioner exhausted state court remedies as to this claim. Doc. 14, p. 8.

Petitioner attaches an affidavit from Jones as Exhibit A. Doc. 6, p. 5-B and Ex. A (p. 12 on ECF).[3] Jones states in her affidavit that on May 27, 2005, she was at home in her bed when there was a knock at her door and "they said it was the Fed." *Id.* She told the officers at the door that David McGriff did not live there. *Id.* She knew him as "Junior Boy." *Id.* She states that later, at about 9 or 10 p.m., she heard noises from

---

[3] The copy of this affidavit did not adequately copy the jurat at the end. This copy is identical to the copy of this affidavit attached to Petitioner's Rule 3.850 motion, which also did not copy adequately. Ex. J, R. 63. It will be assumed that this is a proper affidavit.

next door and the police kicked the door in. *Id.* A few minutes later, they came out with Petitioner. *Id.* The police told Jones that Petitioner should not have run from them. *Id.* Jones states that she did not see Petitioner kick the officer. *Id.*

Petitioner states in his response that he had a letter from Jones that "absolved" him of guilt and stating that she gave Petitioner permission to be on her side of the duplex. Doc. 15, p. 2. Petitioner does not say where in the record the court can find this letter. Jones does not say this in Exhibit A. She only says she did not press charges. Doc. 6, Ex. A (p. 12 on ECF).

These claims were raised as ground eight of Petitioner's Rule 3.850 motion. The trial court denied the claim as to Jones for a variety of reasons. First, the court pointed out that the trial judge pointedly asked Petitioner at trial whether he was satisfied with his attorney's performance for not calling any witnesses, and Petitioner said yes. Ex. K, R. 80. This determination is fully supported by the trial record cited. Ex. B, R. 141-142. Circuit Judge Dekker addressed potential Rule 3.850 issues, and asked Petitioner whether his counsel had discussed with him the decision not to call witnesses and asked if he had any complaints against his attorney. *Id.*, R. 141-142. Petitioner said he had no complaints. *Id.*, R. 142.

The second basis for rejecting the claim as to Jones was that Petitioner did not claim that Jones "would have testified that she gave consent for Defendant to break through the wall in her attic, enter her attic space, and break through her ceiling." Ex. J, R. 81. The court reasoned, therefore, that Jones's testimony would "not have exonerated Defendant of the burglary charge . . . ." *Id.* The court reasoned that Jones

did not observe the entire incident and therefore her testimony that she did not see Petitioner kick an officer "would have had minimal value." *Id.*

The court said that Dickey's testimony, that Petitioner yelled they are trying to kill me, would not have affected the outcome because this would not have negated the charges against Petitioner. *Id.* The court also noted that the officers agreed that something like that was yelled, but instead Petitioner yelled: "you mother f-----s are going to have to kill me." *Id.* This is fully supported by testimony of the officer in the record cited. Ex. B, R. 41, 46, 55, 62, 81.

Petitioner has not shown by clear and convincing evidence that the Rule 3.850 court's findings of fact were erroneous. Thus, those facts are binding on this court. § 2254(e)(1). Petitioner's argument regarding the potential testimony of Jones is unpersuasive. Jones did not state in her affidavit that Petitioner could "enter her half of the duplex at any time he pleased," and she certainly did not say that Petitioner had permission to enter through the attic wall and ceiling. Petitioner's argument that he did not intentionally break into Jones's residence, doc. 15, p. 2, is not persuasive, either. Petitioner intentionally broke into Jones's attic through the dividing firewall. The burglary occurred then because the attic is a part of Jones's residence. Falling through the ceiling was a continuation of that crime. Nor did Jones credibly state where she was located to have witnessed Petitioner not kicking Marshal West. Dickey's testimony would have provided no defense, especially since the officers testified to the contrary. Petitioner plainly has not shown that the Rule 3.850 court's rejection of this claim of ineffectiveness has "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Ground two**

Petitioner contends his lawyer was ineffective for failing to impeach hostile witnesses, that is, Officer Yown and Marshals Boyer and West. Doc. 6, p. 4. He argues that there were discrepancies between their testimony as to who went into the attic first. *Id.*, p. 5-C (p. 8 on ECF). He notes that Officer Yown testified that she went into the attic first, with the help of Officer Boyer, while Officer Perry said he pushed the attic cover aside and crawled into the attic. *Id.*

This was raised as ground seven in Petitioner's Rule 3.850 motion.[4] In denying that claim, the state circuit court again noted that at the end of trial, Petitioner expressed no discontent with his lawyer's performance. Ex. K, R. 78. The court also found no inconsistencies. *Id.*, R. 78-79. Both Yown and Boyer testified that Boyer lifted Yown chest high up into the attic. *Id.*, R. 78. Both Yown and Perry testified that they got a ladder and Perry went into the attic, and both testified that they also went into the attic. *Id.*, R. 78-79. The trial court cited pages 39-41, 51, 59, and 71 of the trial record in support of these findings. *Id.* The court also said that even if there were an inconsistency, it was so minor that it could not have changed the outcome of the trial. *Id.*, R. 79.

---

[4] This is the only part of ground seven of the Rule 3.850 motion that Petitioner argues in this court. Thus, it is not necessary to find that other portions of ground seven have been procedurally defaulted because not raised on appeal from denial of the Rule 3.850 motion.

Officer Yown testified that Marshal Boyer "threw" her up into the attic and "then we got the ladder and Investigator Perry came up to the attic." R. 39-40. On cross examination, Officer Yown said: "I was climbing up getting – me and – kind of me and Chuck at the same time, Investigator Perry." *Id.*, R. 51. Officer Perry testified: "And I pushed the port cover, the attic cover, aside and crawled up into the attic." *Id.*, R. 59. He said he got the ladder. *Id.* He said he could see someone lying down, and "so I made everybody aware of this as quietly as possible and I think at that point Investigator Yown came up into the attic with me." *Id.* Marshal Boyer testified that he assisted Officer Yown in gutting up into the attic. *Id.*, R. 71. Boyer said:

> Like I said, Melissa [Yown] was the one who was up in the attic, like probably from the – either chest high or, you, belly up. I was down on the inside of the residency [sic] you know, kind of – she was putting one of her foot [sic] on my shoulders, and, you know, I could her saying, you know, show me your hands, show me your hands, you know, giving commands to – which I assumed was Mr. McGriff. Eventually, he started talking, you know, to Melissa.

*Id.*, R. 71.

In summary, it is not clear from this testimony as to when Yown was boosted into the attic, or when the ladder was used. Boyer would not have boosted Yown to have a look into the attic if the ladder were there, and Perry used the ladder, so Yown probably put her head into the attic first. In any event, the order of events was a trivial matter at trial. The trial court's finding that it did not matter to the outcome is correct. Therefore, Petitioner has not shown that the Rule 3.850 court's rejection of this claim of ineffectiveness has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

Case No. 4:08cv402-SPM/WCS

**Ground three**

Petitioner contends his attorney was ineffective for failing to object to jury instructions. Doc. 6, p. 5. The allegedly erroneous instruction with respect to the charge of resisting arrest with violence was this: "In considering this count, you must find that at least one of the victims is the same victim in all three elements." Doc. 6, p. 5-D (p. 9 on ECF).

This was raised as ground four in Petitioner's Rule 3.850 motion. In denying this claim, the state court said:

> The purpose of the added paragraph was to protect Defendant by clarifying that the jury could not "mix[] and match[]" different officers for different elements of the crime. *TT, pg. 95.* Without such clarification, the jury could have improperly found Defendant guilty without first finding that "at least one of those victims [officers] is the same victim in all three elements." *TT, pp. 95-96.* The instructions did not lower the State's burden or change the elements of the crime. *TT, pp. 126-127.*

Ex. K, R. 73. The court found that the instruction was not unfavorable to Petitioner. *Id.* Thus, said the court, there was no attorney error or prejudice to the outcome. *Id.*

Where a defendant resists arrest with violence in a single incident and more than one arresting officer is involved, the defendant may be convicted of only one offense. Wallace v. State, 724 So. 2d 1176 (Fla. 1998). In the case at bar, the jury was instructed that Petitioner could be convicted of "resisting officer with violence" if three elements were proved beyond a reasonable doubt:

1. Defendant knowingly and willfully resisted, obstructed, or opposed victim(s) Frank Chiumento, and/or Sixto Boyer, and/or Chuck Perry by offering to do them violence, or doing violence to them.

2. At the time Victim(s) were engaged in the lawful execution of a legal duty.

    3.    At the time Victim(s) were officers.

Ex. C, R. 37. The jury was further instructed that "you must find that at least one of the named victims is the same victim in all three elements." *Id*.

The state court's determination that this instruction did not change the elements of the offense or the burden of proof is a ruling of state law that binds this court. <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1054-1055 (11th Cir. 1987) (jury instruction). "It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.' " <u>Herring v. Secretary, Dept. of Corrections</u>, 397 F.3d 1338, 1355 (11th Cir.), *cert. denied*, 546 U.S. 928 (2005), *quoting*, <u>Agan v. Vaughn</u>, 119 F.3d 1538, 1554-1355 (11th Cir.1997) (citations omitted). Petitioner has not shown that the instruction altered the burden of proof. Indeed, as found by the state court, the instruction was actually favorable to Petitioner since it prevented a conviction based upon, for example, obstructing Chiumento while Boyer was in the lawful execution of a legal duty and Perry was an officer. Petitioner has not shown that the Rule 3.850 court's rejection of this claim of ineffectiveness has "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1).

**Certificate of Appealability**

Case No. 4:08cv402-SPM/WCS

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2254 Rule 11(b).

I find no substantial showing of the denial of a constitutional right. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, I recommend that the court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party should bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

**Conclusion**

Accordingly, it is **RECOMMENDED** that 28 U.S.C. § 2254 petition for writ of habeas corpus filed by David McGriff challenging his convictions for battery on a law enforcement officer, resisting a law enforcement officer with violence, and burglary of a dwelling, in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida, case number 05CF01897, be **DENIED WITH PREJUDICE** and that a certificate of appealability be **DENIED** pursuant to § 2254 Rule 11(a).

**IN CHAMBERS** at Tallahassee, Florida, on December 20, 2010.

                                        **s/    William C. Sherrill, Jr.**
                                        **WILLIAM C. SHERRILL, JR.**
                                        **UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**